Good morning everyone. Please be seated. Holt v. City of Chicago If both attorneys that are going to argue would please step up to the podium and identify yourselves for the record. Good morning, Your Honor. Danielle Pinkston for the Plaintiff Appellant. Good morning, Ms. Pinkston. Good morning, Ruth Masters on behalf of the athlete, City of Chicago, and Detective Christian. Good morning, Ms. Masters. Each of you will have about 15 minutes to present oral arguments, and from that, Ms. Pinkston, you may save some time for rebuttal. Neither of you are required to have your masks on when you're presenting, so feel free to remove them. With that, we'll have Ms. Masters be seated, and Ms. Pinkston, if you need your paper or whatever you would like to bring up. Thank you. Good morning again. Good morning, Your Honor. We are here today to appeal the lower court's February 21st and August 12th, 2020 court orders in a malicious prosecution case because both directly contradict 735 Illinois Compiled Statutes 5-2-1202, as well as well-established laws in this jurisdiction. It is unheard of for a trial judge to find that a plaintiff established a time of patient case sufficient to give the entire case to a jury, allow the jury to decide the outcome, but with the stroke of a pen, the judge renders the statute and the jury's hard work and thoughtful consideration meaningless. The orders cannot stand because the trial court made several reversible errors, three of which I will discuss today. The first is the trial court totally ignored Section 5-2-1201. The trial court should have, but refused to enter, judgment on the verdict. Contrary to the statute, which states in part, promptly upon the return of a verdict, the court shall enter judgment thereon. In essence, an inference can be made that the experienced trial judge who knew what his job was dared hope to find money to order transcripts and dared him to file an appellate attorney to fix the trial court's errors. Second, the trial court erred when it directed the verdict and or granted defendants oral judgment notwithstanding the verdict. After, again, the entire case was submitted to the jury, who decided, and defendants to this day, have never filed a single post-trial motion? The absence of a written post-trial motion by defendants alone requires reversal, and no other option exists that is consistent with Illinois law. Defendants made a deliberate... Counsel, could a judge enter a J&OB sua sponte? Your Honor, in this case, no. Before which the judge felt that it was enough facts sufficient to get to the jury, the judge could have directed the verdict. However, the judge gave the entire case to the jury, not leaving any issues, I'm sorry, but the judge gave the entire case to the jury and did not direct the verdict. He only directed the verdict after they had decided for the plaintiff. And again, the general verdict was for the plaintiff, in addition to three special interrogatories that were given to the jurors as well. Ms. Hanks, is there any authority that you have that the court granting a directed verdict after a jury comes in is reversible here? Well... Is there any other case that said, yeah, you can't do that, you're out of the box? Well, I haven't found it... That is way more articulate than that. It appears as if this might be the first one, hopefully. There are cases such as Crim v. Dietrich and Stackhouse, and in Crim, the court specifically said that Section 2-1202 governs post-trial motions in jury cases and sets out strict rules. As this court knows, the trial judge could have done several things when he received the motion for a directed verdict. He could have granted the motion, he could have denied or reserved the motion. And the statute explicitly states, if the court denies the motion or reserves its ruling thereon, the motion is waived unless the request is renewed in a post-trial motion. But when has a court ever waived anything? Litigants waive things, but when does a trial court ever waive something? Well, that's not something that the trial court does. They don't waive things. They can screw stuff up, but they can't waive it. Exactly. The trial court did not waive the statute, the defendants did. In a case that I mentioned previously in Stackhouse, the losing party did the exact same thing. After they lost their trial, they made an oral post-trial motion, but what they did, they also put a motion in writing. And therefore, the court did have authority to consider any errors. But in this case, the defendants have, to this very date, not alleged any errors with the jury's verdict, and they have not even alleged any evidentiary rulings that were reversible. Counsel, a judge doesn't need a motion to make a ruling, does the judge? I mean, a judge can still respond to you and direct a verdict, for example. They don't need a written or even an oral motion. They can just do it on their own, can't they? Well, Your Honor, the law in this state, again, does allow the court or a trial judge to overturn a jury verdict. However, the law explicitly states that they can do it by ordering a judgment notwithstanding the verdict. This is a post-trial motion. This is not one that can be done orally. But you could grant a J&OB without a written motion, couldn't you? Couldn't a judge just on their own? No, Your Honor. There has been no case law where a trial judge was able to grant an oral J&OB. That is why we have Section 5-2-1202, and that's why we have Crim, and that's why we have Keene and other cases that specifically state that it must be in writing. 5-2-1202B is not just for appellate release. It states, in part, and I'm paraphrasing, release desired after trials and jury cases must be sought in a single post-trial motion within 30 days after the entry of a judgment, and the motion must contain points relied upon, particularly such as writing the grounds. And that all makes sense, but that's telling the lawyers what they have to do. And if they don't do it, they run the risk of forfeiting the argument. But that doesn't mean a judge can't do it on their own if they think that it's warranted. Once again, Your Honor. Does that tie the hands of a judge or the litigant? The statute ties the hands of both parties. I'm sorry, both the litigant and the trial judge. The trial court knows that, again, it could have directed the verdict. It could have said, well, plaintiffs, even though you presented this case, even though we had the jurors listen to the evidence and they saw it exist, they also gave questions. After most witnesses, the jurors themselves submitted questions that the witnesses had to ask. So, verdicts are correct. The jurors sat, they heard, they listened, they even submitted questions. So, there's special interrogatory answers, and the general verdict has been already checked. What you're talking about right now, though, may be going too little, may have dissuaded, whatever. But you've completely ignored the first sentence in 1202. You're not recognizing its existence. If you would, explain to me what you think this first sentence means. Post-trial motions in jury cases. If, at the close of the evidence and before the case is submitted to the jury, any party moves for a directed verdict, the court may grant the motion, okay, or deny the motion, or reserve its ruling thereon and submit the case to the jury. Now, let's not, you know, go on to the next sentence, which I think is reasonably interpreted as preserving errors for review. In this case, did the defendants move for a directed verdict before the case was submitted to the jury? Yes, Your Honor, they did. All right. So, how do you interpret this language when it clearly states that the court can reserve this? Didn't the court reserve the ruling? Yes, Your Honor. All right. So, then you're incorporating the second sentence and saying this ties to Justice Ham's, there is no such thing as a directed verdict once the jury comes back. I mean, that's what you're saying, aren't you? Well, Your Honor, what I'm saying is I'm looking at the plain language of the statute. Right. Oh, my, the first sentence is Ham's meeting in this world. Exactly, Your Honor. It's not conditioned on anything. It's not an exception to anything. I'm not adding anything. I read it to you aloud. Does that provision allow a judge to reserve a directed verdict or not? The answer is yes, and the judge reserved the motion for a directed verdict on several occasions. However, in interpreting this language, to me it says, and before the case is submitted to the jury, this is what the judge can do. No, no, it says that if a motion is made before, if a motion is made, okay, and before the case is submitted, any party moves. That's what happens here. I don't think we can twist those facts. This was a motion for a directed verdict that was made to the judge, yes, I think twice, before the case was submitted, and then I think they made it again after, whatever. Didn't they? Yes, Your Honor. So I'm not going to move the words around because that's certainly not something we can do. I just don't know how you can say that this sentence has suddenly taken away the power of a judge to direct a verdict. Well, Your Honor, once again, the court could have directed the verdict, but again, he decided to reserve the ruling and gave the entire case to the jury for this action. Yes, right. But he reserved it. So, I mean, it's nonsensical to say it was reserved, but not really. It's not reserved. I mean, I don't, anyway. Well, Your Honor, I think the second sentence clearly is related to waiving any errors if you don't preserve that motion. Well, Your Honor, the statute is in the post-trial motion if you don't preserve it. Exactly, Your Honor. And again, the defendants did not have to abide by the rule because the trial judge allowed them not to file a post-trial motion. Again, it says the motion is waived unless the request is renewed in the post-trial motion. There are no oral J&OBs. No, but that also doesn't make sense because why would someone file a post-trial motion if they succeeded like they did here? Why would they file a post-trial motion when the verdict was given to them, their client? Because, Your Honor, the judge should have promptly entered judgment on the jury verdict. And then the defendants would have had 30 days to file their post-trial motion. Well, then again, your argument is really that there's no such thing anymore as directing a verdict or reserving a verdict or granting a motion J&OB. They've all gone out of the wayside because of what you're saying, this second sentence. I think we understand your argument. I don't know that, you know, I find it reasonable, but I certainly understand it. Well, in this case, again, if the trial judge felt that plaintiff did not establish a compensation case, the judge could have directed the verdict. However, the judge gave the entire case to the jurors who decided. And, therefore, the defendant- And that's not unheard of in the law division over the daily sentence. Having sat there for several years, I know that judges on many occasions let the jury decide, but then, for whatever reason, if the evidence isn't supporting it, they will direct the verdict, they can enter a J&OB, whatever, you know, is the appropriate decision at the time. But I think we should, you know, I think we understand the argument. I think we've, you know, fully read the briefs, and you've certainly given us cases that your opponents are saying don't have anything to do with the section. So I would start to focus on the other substantive issue about the jury's verdict again. Sure, Your Honor. I'll move on. I just want to make one point again. The court doesn't have a chance to overrule. However, they can overrule jury verdict judgment notwithstanding the verdict, and also they may order a new trial, but the law has well established that both requests must be made in written motion by one of the parties. This was not done. And, again, the statute's language is plain and unambiguous, and courts must enforce the statute as written and may not read into any exceptions, limitations, or conditions which the legislature did not express. Moving on to the other substantive issue, Your Honor. Even if the defendants filed a written post-trial motion, the evidence supported the jury's verdict. Again, not the general verdict, but, again, three special interrogatories that were found in Hope's favor. And I think there was a significant amount of investigation that was done on those cases. Would you agree? There was over 100 hours. They had 10 detectives or 10 state's jury investigators on it. They had this woman showed up at each and every time they wanted her to. How can you say that there's not sufficient probable cause on that? Well, Your Honor, let's keep in mind probable cause is just a little bit more likely than not. So there's a lot of investigation that yields. She did a rape kit. She went through all the physical exam that that entailed. She made an immediate outcry to her husband. There was a lot there that we can say, hey, that's probable. Maybe not proof beyond a reasonable doubt, but probable cause. Okay. Yes, Your Honor. Again, probable cause in this case was for the jury to decide. Both parties submitted to the jurors conflicting evidence. It was not for the trial court to decide whether or not he believed Hope and the witnesses that were available to Hope or the opposite side. Going back to your extensive investigation, Detective Christian did not conduct extensive investigation. I think what you're referring to is when the case was given to the state's attorney, they allegedly did some investigation, had 10 investigators, but no one tested the fingernails. Again, the rape kit, of course, as Your Honor knows, it was clothing, different swab, and fingernails. No one even tested to see if June... ...retrieves the evidence and then testing is conducted by a scientist, forensic scientist. There's no testing pre-trial or pre-charging that I am aware of that never takes place. There's, I mean, so I don't know that that has anything to do with whether or not there was probable cause to effectuate an arrest. Going back to...I understand, Your Honor. Going back to the investigation, Detective Christian, well, what happened was after June left Hope's apartment, she alleged she was beaten, she was dragged, she was choked, she was thrown around the apartment. However, when she went down, when she ran down to her car the next morning, she had time to fix her hair. She had time to, you know, she woke and waved at Shavonda and Wade. There was no sign of distress or anything like that. As far as the outcry witness, as this court knows, an outcry witness is typically for someone who's 13 years of age or younger. There is not evidence from... That's another comment that is totally unheard of. You're saying that outcry witnesses are limited to 13-year-old children and there's no such thing as an outcry for an adult? Well, Your Honor, in my research that I've done, which has been extensive, I did find a case that says it's for a minor, not an adult. That's a significant fact that they looked at. Of course. And if I could explain, Thomas' testimony was not read into the record. As you all know, June did not appear at trial. Her testimony was read into the record, and even still, the jurors did not side with the defendants. What she said was when she left the apartment, she called her husband. Her husband, it's not a record, but he testified that he was not told about her rape. He was told that she was assaulted. She didn't stay in Chicago. She went to Soft Village and met with Officer Huffmagle. The allegations that she told Detective Christians do not match up with what she told Huffmagle. They are... But you called him the reason why he beat the criminal charge. I agree with you. There was a significant discrepancy or whatever, but that doesn't mean there's no probable cause. That's a whole different ballgame. Exactly. Right at the get-go is when we're determining if there's probable cause. Let me follow up with that. What is your thinking about when probable cause was established? Are you suggesting that someone who said later that she waved at her and her hair looked like she had fixed it, does that go back to probable cause? Well, Your Honor, that's the question. Is probable cause defined at the moment or at the time that the police initiate or a complaint is made, or are you suggesting that probable cause is determined by conflicting testimony from others after there's been a complaint? Well, as far as the testimony from others, that would go back to trial. But my argument is that Detective Christians did not have probable cause to arrest or bring criminal charges against Hope. She went to the hospital and she spoke with June. What about that 10 case? The same 10 case? Yes. Yes. In this case, this case was distinguishable from Hope's case because in the 10 case, there was objectively reasonableness to determine that EX had been assaulted and battered by her boyfriend. Again, not only was she present one day, but she gave testimony that, again, they were in an altercation. He pushed her. He punched her and threw her down. She called someone else, the outside witness. She went to the hospital the next day. Her amniotic fluid had been leaking and they delivered the baby who was stillborn. Again, the officer could have stopped. But, again, probable cause is a state of fact that would be a person of ordinary care and prudence. Detective Christians did not demonstrate ordinary care and prudence. What did she demonstrate? She demonstrated that she basically wanted to put somebody away because she had an allegation of rape. But where in the record is there any suggestion that she, this Detective Christians, had any interest in this case other than doing her normal job of investigating sexual assault? Your Honor, she doesn't have to have an interest. She said she wants to put somebody away. Where is that coming from? I don't understand. What is the evidence that says this detective wanted to put somebody away? Where is that from? Well, Your Honor, there was a lack of probable cause, and malice can be inferred from that lack. Detective Christians knew that June and Holt had been having sexual intercourse for several months. She knew they got into an argument. She knew that June gave Mr. Holt's alarm clock cause for him to be suspended from his job. She knew there were other bits and pieces of this case that could make her say, wait a minute, does June have a motive to act improperly towards Holt? So therefore, in this circumstance, she should have done her due diligence. She should have done a little bit more. This was a rape case, and though all rape cases are bad, it does not mean they are actually true. This was an acquaintance rape. So therefore, she should have done a little bit more, like maybe if June said she was beaten and dragged and choked by Mr. Holt. I think there is going to be a challenge by your opponents to suggest that victims now that have had sex with other individuals can't be victims of sexual assault, and that there is some kind of different standard for those individuals, and that the police department has to do some kind of additional investigation because there was consensual sex. I think you are going to get some concern from many to suggest that sexual assault victims can't be victims if they have sex with the offender prior on a consensual basis. It's like the idea that someone who's battered and has put up with battering for years cannot be a victim of a domestic battery. And that's the same kind of reference you're making to rape victims, that because they had sex with someone before, they can't be a victim, and the detective should know this, and she should act accordingly. That's not my argument, Your Honor. I'll just say two or three phrases. Yes, Your Honor. What I'm saying is there's a case that my opponents have cited. It's a federal court case, and it's only persuasive. It's Askew. Askew v. City of Chicago. In this case, the court held, allegations by eyewitnesses supplied probable cause. When the statement is true, chilling a crime has occurred. Furthermore, in the same case, it quotes Grimino's, and it has a principle qualification. If I could just explain. It says, for example, the police know that the accuser may harbor a grudge against the accused, and I'm omitting citations, or when it is doubtful that the allegations add up to a crime, then some follow-up may be required to make an arrest reasonable. Again, in this case, Detective Christian knew that June was married and having an affair with her husband, who found out when she allegedly called and made this outcry that she was cultic. June had been drinking and blacked out. June hit Mr. Hoek's alarm clock and got him fired from work. The day of the incident, they got into an argument because Mr. Hoek wanted to sit in her vehicle. Is the detective there to decide what a jury normally decides? No, Your Honor. But again, to arrest someone for allegations, if this is the case, any of us can go to jail for rape. As long as somebody says that I raped them, then I can go to jail for that. That's not, that's inappropriate. I mean, we're not talking about whether somebody can go to jail. We're talking about whether there's probable cause. Exactly. You had to show there was a lack of probable cause. Yes, and in the trial court or at the trial court level, we present evidence, again, and testimony from both sides, and the jurors ask questions, and they side with Mr. Hoek that there was a lack of probable cause. Now, would your malice argument then be essentially, since there was no probable cause, that the detective actually was malicious? Is that your malice? That is one of them, Your Honor. The other one?  Who decides to continue the prosecution? Well, Your Honor, again, that's one of the elements, so let's talk about it. Yes. Because you had to prove that it was continued by the city. All right? So let's talk about that. How did you show, in what evidence was there any suggestion whatsoever that this prosecution was continued by the city of Chicago? Well, again, the argument was that Detective Christian commenced and continued. And as the city being her employer, we asked that they be indemnified for her actions. We presented lots of evidence, ample evidence of malice. Again, no, I'm directing you now, I directed you now to continuing prosecution. Okay. I think your malice argument is tied in with your suggestion that there was a lack of probable cause. So you're saying that this detective wanted to get somebody, she wanted to arrest them. I don't know if that would amount to malice, but I know that's kind of your argument. No, now I want you to focus on continuing the prosecution. There were multiple evidence. The Chicago police do not have the authority under any circumstances to approve a felony charge. That's overwhelmingly in the record. I mean, and it's also a fact that they do not continue prosecutions. They actually don't commence them. The siting of the complaint is testified to. But how in this record can you tell us when the state attorney's office and a number of witnesses all testified that the decision to continue a prosecution never, never rests with the arresting body, the municipality, the city of Chicago? Okay. Once again, Your Honor, there's a case, the Sesniak v. C.J. Seattle part that says, even if an informer normally provides false information, he or she is not liable for commencing a criminal proceeding if the prosecution is based upon separate or independently developed information. That is one of our arguments that, again, after June made this allegation about Holt raping and beating and kidnapping her, these were the allegations, that Detective Christian did a little investigation. We know that she went to the hospital. She didn't look for bruises, didn't ask for bruises. And she didn't even look at the clothing and the race kit because she did not want to open up a brown paper bag. Again, these are some very serious allegations. And before she was to arrest someone, she should have done a little bit more than just taken someone's murder. Can you read that language again, though, if you want me to say it? Sure. Yes, ma'am. You can slow down. We're not going to cut you off. I have 15 minutes. We're not going to cut you off. This division does not do that. I want you to be able to give us everything you want to say. Thank you. Read that back. I know you're signing it, so read it back to me about the continuation. Okay. It says, a private citizen commences a criminal proceeding when he or she knowingly gives false information to a police who then swears out a complaint. Even if an informer knowingly provides false information, he or she is not liable for commencing a criminal proceeding if the prosecution is based upon separate or independently developed information. And, again, this is, I'm quoting this, Cesniak v. CJC Auto Parts, Inc., 2014, Appellate 2nd, and then it's 130636 at Pararec Number 11. It is undisputed that, again, Detective Christian conducted her own separate and independent investigation after she received June's complaint. We saw that Detective Christian signed her criminal complaint. In addition, she signed the bottom of June's statement. She also submitted evidence that was not true. She also left out certain evidence. For instance, the evidence she left out, she did not include Officer Sussman's report. Go ahead. She did not include Kevin Coffey, the ambulance driver's report, who saw no signs of injury or battery aside from June saying that she had a headache and her stomach was hurting. Furthermore, when the defense attorney got to the police department for felony review, there were not even any photos of June's injuries. The photos were not made until two hours, allegedly, before ASA Gould was to leave the police station. ASA Gould and Peterson said that it is not their job to investigate. They rely on the police department to gather information, and then when they come for felony review, they expect everything to be there. In addition, June's medical state approved charges without what you're saying they should have had before. Didn't the state attorney ask for photos when they were taking them? Well, that's conflicting testimony, and I thought I did a good job of explaining that in the brief, but I guess I'll have to elaborate. There was conflicting testimony about whether or not ASA Gould asked for photos. She said when she gets there, she expects to have everything ready for her. Her job is simply to review what the police officer has gathered, and then after that, she interviewed a few witnesses and made her recommendation. In addition, in the report, Detective Christians left out a lot of important things, like, you know, at first she said that she didn't talk to the doctor, then she said she talked to the doctor, the doctor said there was fluid with no trauma, also about what the nurse said, and just several things were just left out of her complaint. She also lied about what Hope said to her and what Barbara Hunnicutt said to her. She lied about that again. These two witnesses told her that June was stomping on the floor trying to get help, which would make it seem like there was a rape or something, some kind of battery going on. Barbara denied this at trial and at the criminal trial. In addition, Christian lied on Hope, saying that he told June to be quiet so that she wouldn't wake up her eyes. None of this happened, but Christian put this in her report. She deliberately misled the state's attorney's office. They made photos, actually, Hope had photos taken of him, and it showed hickeys on his neck. Hickeys, as the court might not know, is when people pluck on your neck and, like, passion marks, put it that way. Again, the photos of June had not been taken until three days after the alleged incident. June had been home with her husband by then. I asked both the ASA and Detective Christian, who put these marks on June? Do you know if her husband did or do you know if Hope did it? They didn't know. But, again, it looks bad on Hope that she has marks on her neck three days later, but the date of the incident Christian didn't even bother to look at these things. So, again, the jurors got to hear, got to see the evidence, and they even asked questions. They did not get their verdicts wrong. And if I could just jump back to malice, Your Honor, my argument is was not and is not that malice was only because Christian was out to get someone. Malice is defined as initiating a prosecution for any reason other than to bring a party to justice. Again, a plaintiff who… Detective Christian or the entirety of this prosecution, what is the reason you're suggesting about other than bringing someone to justice? Well, I believe I also demonstrated that, again, malice can be demonstrated by showing that the prosecutor proceeded with the prosecution for the purpose of injuring the plaintiff or some other improper motive. Again, Detective Christian… I can…I do have it. I can… Yeah. I mean, what's the actual record? Are you fully… Sure. One second, Your Honor. If I could just find my… Okay. So, Christian testified that she knew the reports needed to be accurate, complete, and legible at the state attorney's office. A judge and people relied on police reports and would look at her reports. Again, Gould would look at them and Peterson would look at them, and she knew that her actions… I'm sorry. Hold on a second. She knew that, again, if her reports were inaccurate, that they could damage Hope. And, again, I'm citing in the record page 1070, 1059, 1060, 61. I wish I could tell you the exact pages. Those are the pages. And, again, Christian lied. She lied about what Hope said, what Barbara said. Hope denied telling. And I guess I actually already just told you all the things that I presented at trial. But I would like the court to know that to create a question for the trial, in fact, it is not incumbent upon the plaintiff to present direct, affirmative evidence of lack of good faith on the part of the defendant. Rather, circumstantial evidence, which would support an inference of malice, is sufficient. Litigants do not usually admit malice. And in the case of CT versus T Company, the court stated, In addition, Christian, when there was felony review, she didn't even stay in the room when the ASA was questioning the witnesses, even though her investigation was not yet complete. She testified that she put down enough information to make a report, the information that was needed to complete the report and to have it approved by her supervisor at the department. Again, Your Honor, we presented lots of evidence. We did not have to submit more than what we did. Again, the standard was preponderance of the evidence. We presented enough. The jurors saw the witnesses. They saw the exhibits. They asked questions afterwards. The defendants gave them three special interrogatories. I believe one was on balance. And after all of that, the jurors decided. It was not for the trial court to decide whether or not there was enough evidence after giving the case to the jury, because the jury decided. Plaintiffs requested and had a jury trial. It is unfair for a trial court to say, okay, I'm going to give you a jury trial, but if you win, if you get too much money, I'm going to snatch it from you. That is what happened, Your Honor. That is what happened in this case. Well, that's what you think the judge did. Because you sort of said twice or something about him sticking the case. Did you use those words? Your Honor, we do believe that there were- Did you use the word fixing in your brief or something? I probably did, and I can explain why I said that. I think it was-I don't want to hear it. I don't want to hear it. You want to explain why you said the judge fixed the case? Well, Your Honor, the record is clear. The record is clear that after Hope won the case- Counsel, you understand those words have a significant meaning that is disparaging and defamatory. You understand that, right? I do understand that. So we need to be very, very careful when we use those words that we don't imply something that there's no evidence of. I understand, Your Honor. And, again, we can differ on how to rule on cases, and it doesn't mean that somebody is on the tape or fixing the case. I understand. And in the record, it is very clear that Hope won the jury trial. The judge came down, shook Hope's hand, my hand, my opponent's hand. The defendants asked, again, to orally move for a judgment notwithstanding the verdict. The judge said, no, I'm not going to entertain this right now. Bring your motion. The judgment was in my hand, and 45 minutes later, all of a sudden, the judge comes back out and said, oh, I forgot to rule on their motion for a reserved direct verdict. After the jury had already decided, after they had been dismissed, the judge then wanted- This is in the record, but- Yes, Your Honor. I chose not to put this in your briefs. Did you? Oh, no, it's in the brief, Your Honor. Okay. I mean, as far as arguing, I think we've gone far afield here with all of that. But, basically, one of the things you're telling us is that judges really can never direct a verdict if the jury is ruled in favor of one party. That's not my argument, Your Honor. Well, it basically comes down to that, because you've repeatedly argued that the jury returned a verdict. They were F interrogatory, and the judge, whatever, inappropriately, however you want to use the terminology, that the judge has no power when he or she reviews the evidence presented to the jury. They have lost the power to do direct a verdict when the facts of the law do not support it. That's not my argument, Your Honor. Okay, well, it's like this- No, no, Your Honor. And I hate that it came across that way. There are ways in which judges are able to overturn jury verdicts. As I stated before, one, if a judgment not withstands a verdict- The law does not mesh with the text. No. It's not saying the record clearly supports.  So, one, if there's a judgment not withstanding a verdict. This is a directed verdict, so why don't you, you know, keep yourself to that at least. We know what the judge did. He directed the verdict. However, my opponent specifically said they were moving for their oral JNOB. That is in the record. Sure, but that's not what's on appeal here. This was not a JNOB. The judge directed a verdict, didn't he? He did. After the jury decided the entire way. He had reserved it, and then he directed the verdict in favor of the defendant. And he didn't have to do it for the defendant's June Jenkins Rob, because the jury filed it in her favor. That is correct, Your Honor. And the second way a judge can overrule a jury verdict is if the judge orders a new trial. It has been stated in Sears and Fears and other cases that both requests must be made in a written motion by one of the parties. The reason that our state requires written motions is so that, again, there has to be finality, a time when the losing party either appeals or gives up. Written post-trial motions allow the trial judge who observed and saw the same thing publicly the juror saw to reevaluate things and to make sure that, again, there was evidence to support the verdict. I would like to add that, again, the judge only had his notes. He only had his notes and his memory regarding what occurred from February 14th until February 20th. The judge never had a completed or transcribed record, and the defendants never even pointed out points upon which the jurors got it wrong or why he was directing it. If the judge felt that the plaintiff did not meet the primitive case before giving the case to the jury, he could have directed it. And then I would have been following the post-trial motion and asking the court to reevaluate. But there was enough evidence. There was no total failure of hope to present any evidence on the elements of malicious prosecution. All right. You're going to have some time for rebuttal. All right. Thank you. If you need anything else to say right now, you can say it, but we're going to give you time for your rebuttal. Thank you. All right. All right. The answers. May it please the Court. The judgment in the city's favor is both procedurally and substantively correct. Precedent establishes that the circuit court had the authority to rule on the reserve's directed verdict motion even after the jury returned its verdict. Further, construing all reasonable inferences in Holt's favor, the city is entitled to judge him in its favor on three elements of his malicious prosecution claim. Probable cause supported the charges. Detective Christian, second, never did not commence or continue the prosecution. And third, there is no evidence of malice. A failure of evidence on any one of these elements defeats the malicious prosecution claim, and Holt failed on all three. As was just discussed, it is undebatable that this was the Court granting a directed verdict motion, a reserve directed verdict motion. That motion had been put in writing. There were briefs before the Court. And directed verdict motions always, almost always, there is no trial transcript. The judge has just sat through the trial. He knows what the evidence is. The motion cited to authority before the Court. And so, that is undisputed. The Court said it was granting directed verdict. It said it had been specifically, even as Holt's briefs recognized, that the Court went back to his chambers and said he had to make his ruling on the defendant's motion for directed verdict. That directed verdict ruling was procedurally proper. Section 1202 is a limitation on the parties, not the Court. As Freeman v. EPA and Welch v. Romark hold, a Court retains the authority, if not indeed the duty, for the 30 days after the jury returns its verdict to ensure that justice is done. In fact, Freeman specifically says that judges are not umpires or rats. Rats are refused. They are responsible for the justice of the judgment entered. That includes what happens here. The authority to consider a reserve directed verdict motion. Indeed, in Welch, the Court specifically held that an order reserved in ruling on a directed verdict motion until after the jury returns the verdict is interlocutory and, like any other interlocutory order, is subject to amendment prior to the entry of final judgment. If the Court has none of the authority that Holt cites requires a different result, all of those cases- The case counsel provided in support of the suggestion that the judge couldn't direct the verdict. But I think that as a result, it would be good of you to discuss whether there are any questions of fact regarding the elements that you believe were never proved by the plaintiff in this case. So the answer to that is no, Your Honor. As for the merits, Detective Christian clearly had probable cause to arrest Holt and call felony review. Probable cause, as we know, is a state of fact at the time of the subscribing of the criminal complaint that would lead a person of ordinary care and prudence to believe or entertain an honest and sound suspicion that the accused committed the offense charged. The law is settled that there is a presumption that information provided by a victim of a crime is inherently reliable. In cases such as Randall v. Lempke, Rogers v. Turner Holt, if a citizen knowingly provides false information to a detective, it is, quote, impossible for the officer or the prosecution to exercise their independent discretion. And a prosecution based upon that false information is solely attributable to the private citizen. At its core, Holt's argument about probable cause slips the law in its head. And it would require officers to establish that a woman who says she is a rape victim isn't lying, rather than presuming that she is telling the truth. And the law is clear that the officers are allowed to conclude she is telling the truth. Here, that would have required Detective Christian to believe that June had put on an Oscar-worthy performance and calculatedly engaged witnesses to back her up, including the soft-village police officer, all while subjecting herself to penalties of perjury. Such a conclusion is the antithesis of the one an ordinary, prudent person would draw from the evidence known to Detective Christian. And again, it was not her job to establish she committed the crime beyond a reasonable doubt. I feel like the argument we're hearing from Mr. Holt's counsel is that, you know, poking holes in the reasonable doubt, which is what a good defense attorney does at the criminal trial, this isn't the criminal trial. This is way before. This is just to establish probable cause. And there was ample evidence before Detective Christian to rely upon. There were her own conversations and observations of June and her distraught state over three different interactions that aligned with Detective Christian's own experience of how a rape victim acted. She was allowed to rely on just those, just what June had to say. But she did more. Some of her observations occurred at the hospital where June had submitted to a rape kit. And basically, the submission to the rape kit itself is evidence that goes in favor of probable cause. Holt argued that anyone can report a rape and submit to a rape kit. But frankly, it is absurd to the point of demeaning to women to operate from the assumption that a woman would submit to the swabbing of all parts of her body parts and the combing of her pubic hair just out of some vengeance toward God. She had the outside witness, Thomas Robb, whose statement was she called hysterically, reporting that she had been attacked. She did have a conversation with Soft Village, Officer Huffnagle. And even if that is in dispute, whether he had the conversation, and frankly, Officer Huffnagle's testimony is just, I don't remember it. It's not that it didn't happen. She had his report where June had gone to Soft Village and said, I've been raped. The report that detailed that she was upset. They also had June's willingness to ride in an ambulance to the hospital. They had her willingness on the day of the incident to come in after she was at the hospital to identify a photo of Holt. They had her willingness to pull an all-nighter and drive beginning at 8 p.m. through to arrive at Chicago at 1 a.m. to meet with the assistant state's attorney to dispatch pressing charges. That was enough to establish probable cause. It's also interesting, frankly, that counsel referred to Detective Christian knowing that Holt had gotten angry at June while they were at this restaurant. That too, frankly, favors probable cause. It doesn't defeat it. Is probable cause supposed to be determined in a malicious prosecution action after there's been an arrest where other witnesses testify and say, well, I would have heard everything if it happened? Does that have anything to do with probable cause? Your Honor, no. I mean, you have to know. Yes and no. The officers do have to talk to people and they talk to June to establish that there is a basis to arrest someone. So at the time of the arrest, there needs to be probable cause, right? There has to be probable cause to arrest someone. Does that answer your question? My question is whether there's testimony later presented in a trial on whether that goes back to determine whether the police had probable cause in the first instance. No. The probable cause is determined by what the officer knew at the time of the arrest. And that's what you are relying on. It's not everything else that happens afterwards. Hope's complaint that the jury could rely on conflicts in the evidence to reach a verdict in his favor actually misconstrues both the record and the law regarding probable cause. To be sure, he contended that the facts were consensual and claims that he told that to Detective Christian. And he also claims that he told Detective Christian that June had left the apartment and come back and retrieved her purse. But it's not uncommon, as we know, for an accused person to deny that he committed a crime. And police don't have to draw inferences in the accused's favor. They also don't have to investigate every possible lead before making an arrest. And they don't have to go look for every possible corroborating witness. And it's also super important here to remember, this is an allegation of non-consensual sex. There aren't going to be other witnesses. There's not a different standard for whether police have probable cause to believe someone is raped based upon whether they know the person, or whether they're in a relationship with someone, or frankly, whether their hair appears to be too put together for somebody. That's not a defeat of probable cause. The counsel, we're not here right now deciding whether there was probable cause, are we? I mean, that went to a jury, and a jury said there was not probable cause. And then a judge said no reasonable juror could have found that. Correct. Right. So, we're all talking about probable cause. Obviously, it's at the time of the arrest, what's in front of them. If there's a conflict in the evidence, you're saying that doesn't favor the plaintiff. Are you sure it doesn't favor the plaintiff? I am saying that there are no material conflicts in the evidence that support the jury's finding of probable cause here. And aren't you arguing that the plaintiff did not present evidence to establish a lack of probable cause in the arrest of this person? Absolutely. And that everything else that plaintiff is talking about does not go to the ability of an honest, of an ordinary prudent person who knew June's, who had heard June, had seen her behavior consistent with it, that that alone was enough to establish probable cause. And that all of these other things that were brought out don't defeat probable cause. Because the law holds that an officer can rely on the testimony of a witness as inherently reliable, and there were other things that Detective Christian knew that bespoke that June was telling the truth. Her entire behavior, her reporting to Soft Village, her submitting to a rape test, her driving across the night, everything else just goes to whether or not Holt was actually guilty or innocent. And this argument about, you know, the jury reached the verdict and they could rely upon credibility, it's actually not about the credibility of whether Holt really committed the crime. The only question that was relevant was, did Detective Christian have enough affirmative evidence, based upon what she saw herself, based upon what Holt told her, based upon, I'm sorry, what June told her, and based upon the totality of the circumstances that she knew, was that enough for probable cause? And it was. There was no lack of probable cause. And everything else that's thrown out there, and I know we distinguish it in our brief, doesn't go to that issue. In fact, as ASA Gould testified, in Illinois, the testimony of a single victim is enough to prove a crime beyond a reasonable doubt. Officer Christian didn't need to do more, and the arguments that are being made is she needed to do more. For all these reasons, she had an objective and reasonable basis as a person of ordinary prudence would to hold an honest and sound suspicion that Holt had raped June. And that was all the law required. Independently, the circuit court correctly concluded that Detective Christian neither commenced nor played a significant role in continuing Holt's prosecution. Both ASA Gould, who was the felony review attorney, and the attorney who tried the case, ASA Peterson, specifically testified that Detective Christian did not influence their decision to initiate or continue the prosecution. When ASA Gould was asked what information Detective Christian gave her to make her believe a rape occurred, Gould replied, and I'm quoting, It's information that the victim gave me. It was ASA Gould who made the decision to proceed with charges based upon June's sworn complaint, which, again, June swore under penalty of perjury. And as ASA Gould stated several times, the state's attorney office does not proceed with a rape case without the victim's cooperation. The circuit court was correct, then, in holding that June, as a matter of law, commenced the prosecution. And just to address a few of the other points that counsel made, ASA Gould conducted an independent investigation. She interviewed June. She interviewed Thomas Ralph. She interviewed Holt himself. She interviewed Barbara. And they all told Gould, according to her own notes and her own testimony, essentially the same facts that Detective Christian had. So there was no misleading ASA Gould by anybody, because she had the same information. I understand now that there are conflicts in the evidence, that people are saying they didn't say things that Detective Christian had written down, or that Gould had written down, but that's not what the record reveals in terms of commence and continuing. That Gould had the same information. So it wasn't Detective Christian who had any, you know, undue influence here. And it's really telling, as well, that ASA Gould was the person who saw the bruises. That was an independent assessment by her, and June told her those bruises were inflicted by Holt. Again, it's not the job to disbelieve people who are telling you something credible. There's also no basis to conclude that he played a significant role in the prosecution, in continuing the prosecution. So she testifies before the grand jury. Her testimony is based solely on what June told her. Again, if that turns out not to be accurate, if it's wrong, that rebounds to June, not to Detective Christian. And ASA Peterson testified to re-evaluating the evidence and having 10 investigators on the case. Those investigators are the ones who themselves, this is the state's attorney's investigators, located the ambulance driver, Kevin Cossey, who was a witness who was not known at the time that the charges were initiated, and brought him into court to testify on behalf of the prosecution. This was a really independent investigation by them. To be sure, Detective Holt was called to testify in rebuttal at the criminal trial. It was five minutes of testimony on a limited issue after being subpoenaed by the prosecution to testify as a rebuttal witness. It was about whether Barbara had told her... Let me ask you this. The law, the cases that we have, one says that once the police interview a victim, that there's prima facie evidence that that account is acceptable or amounts to probable cause. There's other cases that say that once a grand jury returns an indictment, which this case was, it was the return of an indictment, it wasn't a preliminary hearing, that that's prima facie evidence of probable cause for purposes of a malicious prosecution. Then there's other authority that says probable cause existed where the state attorney's office approved charges and a grand jury returned an indictment after hearing all the evidence. So, what is the response to that? This is really actually a softball to you. How does one break that or establish the opposite for a jury with the law that the judge is also required to follow? You know, I don't think that there is any evidence in this case breaking that. There was a grand jury indictment based on what June... based upon Officer Detective Christian testifying to what June told her. There is a reference, I believe, in Holt's brief that states that... Didn't the judge say that at the trial? After he denied the directed verdict? He said there was probable cause to arrest this person and he denied the state... the defense request for a verdict at the criminal prosecution, even though later he did find that the state had not proved its case beyond a reasonable doubt? Right, that's absolutely correct. The criminal trial found that there was... The criminal trial just found no basis. When he denied the motion for a directed verdict. And then there's this grand jury indictment. I would think, though, if you could show there was something, I don't know, fraudulent about the proceedings before the grand jury also. I think counsel will say that the detective lied to the grand jurors. But these other cases would indicate when the police interview a victim and the victim reports that the crime has occurred, that that is prima facie evidence of probable cause. That is entirely correct. And there is no evidence detective lied before the... Detective Christian lied before the grand jury. The only evidence in the record is that she was asked questions about what June told her and she answered those questions. There's absolutely no evidence... How do you account for this verdict of the jurors here? Six million dollars and they were told what the elements are. The plaintiff had to prove a lack of probable cause. I mean, there's five elements. Two of them we know occurred. There was a verdict in favor of... Or there was a finding in favor of the Senate at the criminal trial. And... But the three elements that are of concern are the probable cause, malice, and... Feed me the other one right now. Commencing in four. Commencing in four. Damages? Continued. No, damages were... He was charged. I don't know how many people he spent three years in custody. So, Your Honor, I can't... You know, I'd be engaging in speculation to account for the jury's verdict here. I will say this. I think that the arguments that are being made here today are reflective of some of the other... The way some of this case was presented to the jury. And it really strayed from what the jury had to decide about, you know, when does probable cause... When do you determine probable cause? How do you determine malice? I mean, we've heard all kinds of allegations here today that Detective Christian had a... She didn't know Holtz. She didn't know Christian. It wasn't to the jury that you recall? It was argued. It wasn't as if the detective lied. Yeah. But there's no evidence that she lied. You know, you can have conflicts in the evidence. You can have something that people differ on. That's not lying. You know, that can happen. And it's not enough to defeat probable cause. It's not enough to defeat any of these other things because, you know, probable cause, you either show a motive or you show lack of good faith. There is no lack of good faith here. And one thing that is extraordinarily important, I think, to believe here, to, you know, focus on here in terms of Detective Christian's reliance on June Holtz. June Holtz never wavered. Well, let's talk about this fact. The detective interviewed the husband. The detective interviewed Huffnagle. The detective interviewed the state's attorneys. The detective spoke, maybe the detective didn't speak to the person that transported the victim to the hospital. Every single person that testified about her appearance at the time gave the impression of the demeanor that someone had been actually assaulted. Now, where is-I guess I'll ask counsel. Every person that talked about her demeanor testified that she appeared to have been the victim of an assault. So, I don't know. I guess I'll ask counsel. The words of the defendant we know. He obviously indicated immediately that this was intentional. But-and there was testimony, I will grant, from one of the-I guess his cousin, that she testified that this woman looked like she had fixed her hair. And then the other aunt testified that if there had been noise or there was any sexual contact going on, she would have heard it. But I'm not sure that that goes to the victim's demeanor and all the persons that were interviewed in order to get to the point of whether or not to have a charge filed. It does not, Your Honor. And I do just-I would wrap up by touching on something that Your Honor just mentioned, which is about the witness who Barbara Honeycutt, who was the aunt in the downstairs apartment. Barbara Honeycutt had said she could hear everything in that apartment. And even though she testified to that, her actual then at trial, she said she didn't hear anyone in the apartment from 6.30 to 9.30 p.m. the night before. Well, Holt and June agreed they were there. And then she said in the morning, despite saying that she could hear them having sex, she didn't hear it. So, I know Holt focuses on this issue about whether or not Barbara told Detective Christian that she heard June stomping. First of all, it was enough to rely on the fact that June thought she was stomping. I want to make one thing clear. At the police station, did Ms. Honeycutt tell the police, or at least how did the officers and the state attorneys describe her testimony at the police station? I'm not talking about what she said at some trial later. I'm not talking about the niece that testified at some trial. What did the state attorneys and the detective report that they were told by Honeycutt on the day that the victim was being interviewed for purposes of possible charges? That she heard stomping from the apartment. And that she supposedly heard June say something about, I am going to take you for what you have. Okay. All right. Okay. That is not enough, though, to defeat probable cause. It would just establish, the comment at least would just establish, you know, that perhaps there was a reason that he wasn't guilty. But all of her other behavior, June's behavior, her demeanor, the reports from everybody else, was enough. The state attorney made a decision after interviewing everyone to approve a charge. If the court has no other questions, we feel it is entirely clear that the grant of the rented verdict was proper. We would rest on the briefs for everything else. We highlighted a lot of factual discrepancies between what is in Holt's brief and what the record shows. And, you know, I think we heard a lot of those discrepancies again today. Thank you, Your Honor, for the reasons set forth in our briefing here today. We ask that the judgment be affirmed. All right. Kingston, you may respond. Your Honor, I would first like to address the response to probable cause. And as the court knows, probable cause when parties present conflicting evidence should be decided by the jury. It's a question of fact of the jury. And, again, where circumstances give rise to the alleged malicious prosecution or dispute, the appropriate venue to resolve that dispute is before a jury and not by the court as a matter of law. Even if the court takes the proposition that the trial judge had the authority to direct the verdict after the jury decided the case, there was still enough conflicting evidence for the jury to do this. It was not a matter of law for the judge to decide because it did not so overwhelmingly favor the defendant that no other verdict could stand. Well, then let's talk about those cases that I described to you. Okay. You have a number of cases that say that once a reasonable person has made a decision that a crime has occurred, that that individual reports that that's prima facie evidence that probable cause exists. Then you have the cases that say that when a grand jury returns an indictment, that that is prima facie evidence of probable cause. Then you have, in this case, the judge saying, but that's not in front of the jury. So, forget that. Okay? So, how do you, how did you show to the jury with this prima facie, this is what the judge is looking at as a matter of law when he's being asked to grant the directed verdict. So, how is that judge, as a matter of law, finding that you somehow went over that hurdle? Okay. Well, Your Honor, what happened at the trial court level is, you're correct, when a witness supplies information to an officer that a crime has occurred, it can be, it's a presumption. But as the court knows, presumptions can be rebutted. And that is what I did at the trial court. I presented other evidence that showed that June, even though she made the allegation, I rebutted the credibility of her and also the fact that- Well, how did it, when the jury ruled absolutely against June? They ruled in her favor. A jury found, against Tony Holt, in favor of June Jenkins Rock. Oh, you mean in the criminal- No, no. In this case. Remember, that's why the case went back, because that part of the ruling, there hadn't been a judgment entered in her favor. Oh. So, this was not an appealable order. Am I wrong? I thought the jury ruled in favor of June Jenkins Rock, against Tony Holt. No, no, Your Honor, that's incorrect. What happened was, we had plaintiff hold, and we had three defendants. June Rock, Detective Patricia Christian, and the city of Chicago. So, I told, I mean, she didn't show up at the trial. So, what did the jury do? You tell me. They just did not check the box that found her liable. They found the detective and the city liable. Again, there can be more than one proximate cause. June was one, but they- So, you're saying that the verdict was never entered? Do we have another jurisdiction problem? No, what happened was, Your Honor, I had the judgment in my hand completed, and the reason that it was not entered, because the city had a question. Was it going to be in Holt's favor against June, or not against June? She was just not found liable. So, again, Holt was not found to have, I mean, I'm not really sure if I understand what you're saying. Well, let's say a verdict submitted. Yes. She was sued. She was. Was the verdict submitted to the jury regarding June Jenkins Rock? Yes, and they found- And you're saying that the jury found her not liable? Yes, and that's because I- And didn't the judge eventually enter a judgment on the verdict, a finding of no liability for June Jenkins Rock? No, the judge just granted their motion for a direct verdict after the jury returned the verdict in the absence of special interrogatory. So, no verdict was ever entered in her favor. And so, the jury- You need to explain this. Okay, so there was a verdict form A, and it had three defendants, and it had to check the box if they were liable or not. The jurors found that June was not liable for malicious prosecution. Again, she could have been, or she could not have been. It wasn't important for her to be found liable. Is that a verdict in favor of June Jenkins Rock or not? Well- Did you call it a verdict form? Yes, it was a verdict form A that the defendants submitted. Now you're saying it's really not a verdict. No, no, no. It was a verdict that was returned in Hope's favor, Your Honor. In whose favor? In Hope's favor and against the city of Chicago. What about June Jenkins Rock? Are we going to resolve this or not? They found her not liable, Your Honor. Okay, and was it a verdict? It was a verdict, yes. All right. So there was a verdict against Hope in favor of June Jenkins Rock. Yes, you can say that. All right. Okay. All right. Correct. Going back to the probable cause, at the time of Hope's arrest, Christian lacked probable cause. Again, she did not have any objective evidence that would demonstrate that the crime actually occurred. And, again, the crime was not just rape. It was that Hope kidnapped her, he beat her with a gun, he held her at gunpoint, and he wouldn't let her leave, and also it was rape and some more battery. Those were all the allegations. And, again, it's noteworthy to note that even though the trial testimony of June was read into the record, she even said that when she was ready to leave, she woke Hope up and she asked him to let her out the house. She could have left on her own. She didn't say he chained the door. So, again, the jurors heard all of this, Your Honor. Again, there were no clothing, there were no pictures that were prepared. And I want to correct the court. The court stated that Detective Christian spoke with Officer Huffnagle. That was not his testimony. Well, I didn't say that. I said that a number of people provided information about her appearance and demeanor at the time. And Huffnagle, who was the first officer who June made the report to, he did not speak with any of the Chicago police officers. He did not speak with her. Her, meaning June? Yes. Yes, he did, Your Honor. And his testimony is very clear. She made several allegations, but Huffnagle said he did not know if they were true. That's why things need to be investigated. Again, Huffnagle stated to the jurors that he would have investigated these allegations to determine if there was some kind of merit. The whole idea of the trial to search for truth, I mean, the police and these people that are interviewing her, they're not there to decide whether or not she's telling the truth, are they? No, they're not, Your Honor. I mean, No, they're not. Again, there should be some evidence sufficient that a person of ordinary prudence would believe that a crime actually occurred. And, again, if all the things that June said had to have occurred, there should have been some objective evidence, but it was lacking, yet still a cop was arrested and put in jail. Again, Your Honor, If you had one case that you would like to rely on that was an actual malicious prosecution that you think supports the decision here, what case would that be? There are several cases. I would use Fabiano. I would use Swick. I would use Randall. I mean, there are a plethora of cases that I could put in my brief. I just said, if you had one, if you could really pick one that you think supports the decision here, which of the many would it be? I would go with Fabiano. And tell us why. Fabiano, because in that case, answering the court's question about the probable cause at the grand jury or the indictment and things of that sort, it is true that, again, a grand jury indictment or information is evidence of probable cause, but that can be rebutted, and it was a trial. Again, it was rebutted because, again, I was able to show the jury that Christian was the only witness who testified at the grand jury. She told the grand jury that her investigation found several things that were false that she did not find. She basically went on what June told her, and, again, there were clues and there was evidence that showed that what June said was false. Again, Christian knew that during the time that she was allegedly raped, dragged, beaten, and kidnapped, that she left the apartment to go to her car at least two or three times. If, in fact, Hope had kidnapped her and was raping her and dragging her, she could have left. She could have gone on about her way, but she kept going back and forth, back and forth. Even Hope left the apartment several times to move her car. During that time, she could have called the police. She's not a minor. She's a middle-aged woman in her 30s or 40s. She had the opportunity to call someone for help. In addition, Hope had a pit bull, a female pit bull in his apartment. I was on the porch. Not one person testified that this pit bull was barking or acting erratically when this violence was said to have occurred in Hope's apartment. The jurors even asked questions about this. Did you mention the pit bull in your brief? I did, probably very briefly, but, again, it's in there. And, again, the jurors' questions. What did you say? I'm trying to recall. Essentially, probably, Your Honor, that, again, the pit bull was in the home, and I believe Barbara Honeycutt did not hear the dog barking. I believe Tony Hope was acting as if the dog was barking. Also, in the appendix. But you believe it's in your brief, don't you? I know it is, Your Honor. Even in the appendix, you have the jurors' questions, and I believe that it's also in the questions. So, again, if what June said was true, and she was being victimized the way that she accused Hope of, then that dog would have been barking as well, and Barbara would have heard that. Furthermore, Your Honor, just going back to the probable cause, the jurors in the civil case did not have to believe that there was probable cause, even if there was a grand jury indictment, et cetera, and so forth, nor did they have to believe what June said was true. It was rebutted by evidence. And, again, it was conflicting evidence, and, therefore, the trial court was not the person to decide that. It was a matter for the jury to decide, since there was conflicting evidence. And when looking at the evidence, the total totality of the evidence, the defendants of the moving party cannot say it overwhelmingly favors them and not hope that a different verdict would be proper. There were some more factors I wanted to touch on about things like the rape kit being submitted and matters like that. That is not evidence of probable cause. As was elicited at trial testimony by, I believe, through Huffnagle and also Christian, anyone can go to the hospital and ask for a rape kit. It does not mean that they were raped. And, again, I'm not taking rape lightly. I'm a woman. It's a bad thing. It's also a bad thing to falsely accuse someone because you want to be vindictive. Detective Christian had information from June Hope and Tony that on the date of the incident, the reason why they had this agreement, he wasn't angry. He was upset because he was hit on at an IHOP and wanted to go sit in the car. June did not want him to go sit in the car. She wanted him to be with her eating. She did ask him to pump her gas and pay for it. Hope did not want to do that. She said, and I don't want to say the full verdict. Okay, Christian knew about this. And because he knew about these facts, he should have taken it a little bit more, done a little bit more investigating because that's her job. Again, even Huffnagle said he would have investigated. He would have investigated. And, again, the only persons that Detective Christian spoke to were Shavonda Honeycutt and also Barbara Honeycutt. And, again, she even lied and misled the state attorney to believe that what Barbara Honeycutt didn't say was true. Barbara said, I did not say this. I did not say that I heard this or I heard stomping and banging. But Christian put that in her report. If it's in her report, it makes the grand jury believe that maybe there was a rape. Maybe he did drag her. Maybe he did beat her. And, again, she put enough in her report to make those allegations seem true. All right. I think it's time for you to sum up. Okay. If there's anything else you wish to add, please add. I thought I had 30 more minutes, Your Honor. How many? Three more? Well, go right ahead. Thank you. Thank you. In conclusion, the trial court cannot say that all the evidence was viewed most favorable to Hope, so overwhelmingly favors the moving party that no contrary verdict based on the evidence could stand. Regardless of whether he entered an order on a judgment notwithstanding the verdict or a direct verdict, the elements or the standard is still the same. There was no total failure of Hope to establish any element of malicious prosecution. Furthermore, the parties, as I said before, offer conflicting evidence regarding whether Christian commenced and continued the prosecution against Hope. And, again, she testified at trial about what Barbara said, which showed the jurors that she continued. She also continued by testifying falsely at the grand jury and that she acted without probable cause, with malice, and was the proximate cause of Hope's injuries. Again, there can be more than one proximate cause. In this case, we believe there was June and Detective Christian. Just about everything in this case was disputed, and because of this, the jury was uniquely qualified to resolve the conflict between the parties at the jury trial, and they did. Furthermore, Your Honor, in Tate v. Executives, the court in this – well, this reviewing court should side with the court in that case, which said, the jury spoke loud and clear, and once a jury has spoken, this court is obliged to construe the facts in favor of the party who prevailed under the verdict. We're asking that you grant Hope's appeal, and that you consider the briefs that were filed in the argument today, and award the request of release. Thank you very much for your time. Thank you both for your time. The case is well argued. We all appreciate it. The case is under five minutes. We're in recess until the second case is called. So, thank you.